**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kendra Rightsell,<br><br>           Plaintiff,<br><br>v.<br><br>Concentric Healthcare Solutions LLC, et al.,<br><br>           Defendants. | No. CV-19-04713-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Kendra Rightsell's ("Plaintiff") Motion for Partial Summary Judgment (Doc. 66.) Also pending before the Court is Concentric Healthcare Solutions, LLC, dba Concentric Healthcare Staffing, Kyle Silk, and Chris Bollinger's ("Defendants") Cross-Motion for Partial Summary Judgment (Doc. 72.)[1] For the reasons below, Plaintiff's Motion is granted in part and denied in part, and Defendants' Motion is denied.[2]

**BACKGROUND**

Plaintiff, a former employee of Defendant Concentric, alleges that Defendants

---

[1] Andrew Jacobs and Chris Bollinger are also named as defendants in this action, but Plaintiff's Motion is only as to the liability of Defendants Concentric and Silk. (Doc. 66 at 1.) Defendant Jacobs has not joined in the Cross-Motion. However, for ease of reference, the Court refers collectively to the moving defendants (Concentric, Silk, and Bollinger) as "Defendants." When referring to Defendant Jacobs individually, the Court will refer to him as "Defendant Jacobs."

[2] The parties' request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

discriminated against her after she took legally protected leave, in violation of the Family Medical Leave Act ("FMLA") and the Arizona Fair Wages and Healthy Families Act ("Paid Sick Leave Act"). (Doc. 1.) Plaintiff began working at Concentric in May 2015. (Doc. 73 at 1–2.) While Plaintiff was employed at Concentric, Defendant Silk was President and Chief Operating Officer, and Defendant Jacobs was Vice President. (Doc. 73 at 2–4.) Defendant Jacobs was Plaintiff's immediate supervisor. (Doc. 73 at 2–3.)

In June 2017, Plaintiff submitted an FMLA request to Shannon Riley ("Ms. Riley"), Concentric's Compliance Manager and Human Resources professional. (Doc. 73 at 19); (Doc. 78 at 2.) Plaintiff was approved for intermittent leave. (Doc. 73 at 6–7.) During her time at Concentric, Plaintiff used 142.5 total hours of leave, although the parties contest how many hours were paid vacation time as opposed to FMLA leave. (Doc. 73 at 20); (Doc. 78 at 3.) Less than a year after Plaintiff's FMLA was approved, Defendant Jacobs turned her down for a promotion. (Doc. 73 at 8.) Plaintiff alleges that this was due to her FMLA absences; however, Defendants contend that Plaintiff was not promoted because of her poor job performance. (Doc. 73 at 8.) Allegedly because of this declining job performance, Plaintiff was put on a "Performance Improvement Plan" ("PIP") on July 13, 2018.[3] (Doc. 73 at 12.)

On July 16, 2018—the business day after Plaintiff was put on a PIP—Plaintiff texted Defendant Jacobs that her daughter was ill, she was trying to arrange childcare, but she would not be available to start her shift. (Doc. 73 at 13.) Defendants allege that Plaintiff did not have paid time off ("PTO") available to cover her absence on July 16. (Doc. 73 at 13–14.) Plaintiff alleges that she had 4.4 hours of unused PTO. (Doc. 73 at 13–14.) Regardless, Plaintiff was informed of her termination at 4:45 P.M. on July 16. (Doc. 73 at 15.) Citing both the denial of promotion and her termination, Plaintiff now seeks damages under the FMLA and Arizona Paid Sick Leave Act.

---

[3] Defendants allege that this date was July 12, but the Court could find no support for this date in the cited portion of the record. (Doc. 73 at 12 (citing Doc. 73-3 at 12).)

# DISCUSSION

## I. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)).

## II. Striking Evidence

Plaintiff alleges that Ms. Riley's and Defendant Silk's declarations are "sham" declarations that should not be considered at summary judgment. (Doc. 77 at 5, 8.) Plaintiff also makes several evidentiary objections to these declarations. (Doc. 77 at 5–11.)

### A. Shannon Riley Declaration

#### 1. The Mandatory Initial Discovery Project and "Sham" Declaration

Plaintiff objects to the Riley declaration because Ms. Riley states that she was suspicious of Plaintiff's FMLA use despite this suspicion never having been disclosed to Plaintiff during discovery, and because the declaration is a "sham." (Doc. 77 at 5–8.) Although Plaintiff is correct that if this information was not disclosed pursuant to the MIDP, then it is inadmissible, (Doc. 29 at 2 n.1), the Court finds that these paragraphs do not affect the outcome of the underlying Motions. Therefore, Plaintiff's objection is overruled.

#### 2. Personal Knowledge

Plaintiff next objects to Ms. Riley's declaration because certain statements lack personal knowledge. (Doc. 77 at 5–8.) At summary judgment, a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "An affiant's personal knowledge and competence to testify are often inferable from the facts stated in the affidavit." *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 940 (N.D. Cal. 2016). However, an "affidavit must include sufficient facts clearly within the affiant's personal knowledge to permit this inference." *Id.* "Personal knowledge can be inferred from an affiant's position." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000).

Plaintiff first contends that Ms. Riley does not have personal knowledge of the assertions in paragraphs 9, 28, 32, and 33 and therefore these paragraphs are inadmissible and should not be considered at summary judgment. (Doc. 77 at 7.) In the declaration, Mr. Riley states that the declaration is made "based on my own personal knowledge," and that she is the current Director of Human Resources and was a Human Resources ("HR") professional while Plaintiff was employed at Concentric. (Doc. 73-1 at 2–3). Paragraph 9 states, "Frequently, Plaintiff would request FMLA leave when her daughter—who lived

out-of-state—came to visit." (Doc. 73-1 at 3–4.) Ms. Riley provides no reason why she has knowledge of when Plaintiff's daughter was visiting, nor does either her position, or her general statement at the beginning of the affidavit that it is based on her personal knowledge, warrant an inference of such knowledge. Plaintiff's objection to this portion of paragraph 9 is sustained. Paragraph 28 states that "[Defendant] Jacobs reached out to Plaintiff[,] and she informed him she would not be coming to work that day." (Doc. 73-1 at 7.) This statement is textbook hearsay. The Court does not see how Ms. Riley could have known that fact without consulting with Defendant Jacobs. The objection to this portion of Paragraph 28 is sustained. Paragraphs 32 and 33 relate to Concentric's PTO policy. (Doc. 73-1 at 7–8.) It is a permissible inference that an HR employee would have personal knowledge of Concentric's employment policies. Moreover, Ms. Riley specifically attests that she is "*personally aware* of Concentric terminating other employees due to the fact that they called off work without sufficient PTO available." (Doc. 73-1 at 8 (emphasis added).) Given Ms. Riley's attestations, and her position in the company, there is sufficient evidence to infer personal knowledge, at least at the summary judgment stage. Plaintiff's objections are overruled as to paragraphs 32 and 33.

### 3. Hearsay Objections

Plaintiff next objects to paragraphs 26, 28, and 29 because they contain inadmissible hearsay. (Doc. 77 at 8.) "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, evidence need not be in an admissible form to be considered at summary judgment. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Enriquez v. Gemini Motor Trans. LP*, No. CV-19-04759-PHX-GMS, 2021 WL 5908208, at *2–3 (D. Ariz. Dec. 14, 2021). Instead, the focus is "on the admissibility of its contents." *Fraser*, 342 F.3d at 1036.

"Hearsay" is an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Paragraph 26 states that "[Defendant] Jacobs also told [Ms. Riley] that Plaintiff did not have any PTO for the

day, according to the PTO report from Choice Employer Resource—Concentric's payroll company." (Doc. 73-1 at 7.) What Defendant Jacobs told Ms. Riley was a "statement" made outside of a courtroom and may be asserted as truth: that Plaintiff, indeed, did not have PTO to cover for her absence. However, the statement may also be used to show belief: that Defendants *believed* Plaintiff did not have enough PTO, and it was this *belief* that prompted her termination. To the extent the statements show Defendants' belief, they are admissible. To the extent they are propounded for their truth, they are inadmissible.

Paragraph 28 states, "[Defendant] Jacobs reached out to Plaintiff and she informed him she would not be coming to work that day. . . . [Defendant] Jacobs instructed [Ms. Riley] to call Plaintiff and inform her that she was terminated." (Doc. 73-1 at 7.) The first part of the paragraph has already been excluded for lack of personal knowledge. The second part of the paragraph is hearsay. What Defendant Jacobs told Ms. Riley was an out-of-court statement, and it is being used for its truth: that Defendant Jacobs told Ms. Riley to fire Plaintiff. Therefore, that part of the paragraph is also inadmissible and will not be considered.

Paragraph 29 states, "[Ms. Riley] . . . followed [Defendant] Jacobs's instructions to inform [Plaintiff] that she was terminated." (Doc. 73-1 at 7.) The Court will not consider the part about Defendant Jacobs's "instructions" because, as explained previously, what Defendant Jacobs said out of court, in this context, is hearsay. The Court will consider that Ms. Riley informed Plaintiff that Plaintiff was terminated.

### B. Defendant Silk's Declaration

Plaintiff makes various evidentiary objections to Defendant Silk's declaration and contends that it is a "sham" declaration that should not be considered at summary judgment. (Doc. 77 at 8–11.) However, even if the Court assumed the accuracy of Plaintiff's arguments, Defendant Silk's declaration has no effect on the Court's decision on the underlying Motions. Therefore, Plaintiff's objections are overruled because they are moot.

### III. FMLA

#### A. Interference

Plaintiff first moves for summary judgment on her FMLA interference claim. (Doc. 66 at 8–10.) She alleges that her FMLA leave was a factor in Concentric's decision (1) not to promote her; and (2) to terminate her employment. (Doc. 66 at 10.) 29 U.S.C. § 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." "When a party alleges a violation of § 2615(a)(1), it is known as an 'interference' or 'entitlement' claim." *Sanders v. City of Newport*, 657 F.3d 772, 777–78 (9th Cir. 2011). An employee may prevail on an interference claim if she can prove that her employer "use[d] the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1123–24 (9th Cir. 2001). Instead of applying the burden-shifting *McDonnell Douglas* framework, an employee must prove interference "by using either direct or circumstantial evidence, or both." *Sanders*, 657 F.3d at 778.

Plaintiff was denied a promotion sometime in early 2018. Defendants contend the denial occurred in March 2018. (Doc. 73 at 22.) Plaintiff contends the denial occurred in January 2018. (Doc. 67 at 6); (Doc. 78 at 5.) However, Plaintiff's job performance allegedly began to decline in January 2018. (Doc. 73 at 21–22); (Doc. 78 at 3–4). Even assuming that Plaintiff's timeline is correct, Plaintiff points to no evidence from before or during January 2018 that Concentric was critical of her FMLA leave. (Doc. 67 at 5–6); (Doc. 66 at 10.) Although Plaintiff does provide evidence of criticism *after* January 2018, discussed below, this evidence is not enough to show that all reasonable juries would find that Concentric considered her leave when it decided not to promote her. Given Plaintiff's alleged timeline, a jury could just as easily find that Concentric did not promote her based on her recent declining job performance—the extent of which is disputed—without any consideration of her leave. (Doc. 73 at 21–22); (Doc. 78 at 3–4).

Plaintiff next alleges that Concentric considered her leave when she was terminated on July 16, 2018. (Doc. 73 at 34); (Doc. 78 at 11–12.) Defendants put forth two reasons for Plaintiff's termination: (1) that Plaintiff was fired for deficient job performance; and (2) Plaintiff was fired for calling off work without available PTO. (Doc. 72 at 15–16.) Plaintiff points to several pieces of evidence that allegedly demonstrate that Defendants considered her FMLA leave in their termination decision. First, Defendant Jacobs testified that Ms. Riley told Plaintiff "she had to get [doctor's notes] every time she called off." (Doc. 67-1 at 63.) Second, Ms. Riley's written memorandum of a meeting between her, Plaintiff, and Defendant Jacobs stated that they discussed "her absences with FMLA and the effects on the company." (Doc. 67-3 at 42.) Third, in regard to a possible transfer to another division, Defendants referenced that Plaintiff would "not be absent from her current team any longer" if she was transferred. (Doc. 67-3 at 44.) Fourth, in regard to an email from Plaintiff to Ms. Riley asking Ms. Riley to confirm that Concentric had never asked Plaintiff for additional medical certification, Defendant Silk forwarded the email to Defendant Jacobs, stating "[Plaintiff's] positioning us to sue." (Doc. 67-3 at 48.) Finally, five days after Plaintiff alleged to Defendant Silk that she did not receive a promotion because of her FMLA leave, Defendant Silk wrote an email stating he did not "appreciate [Plaintiff's] behavior in the past few days." (Doc. 67-3 at 52.)

Although Plaintiff may have propounded sufficient evidence for a jury to find in her favor, she has not propounded sufficient evidence to show that *all* reasonable juries would do so. Defendants' statements certainly imply that they were critical of Plaintiff's leave, but they do not establish that it played a part in their decision to terminate her. This is especially true given that Plaintiff called out only a business day after she was placed on a PIP allegedly in violation of Concentric's policies. Thus, there were at least two *other* factors, both of which are disputed,[4] that could have independently served as a basis for Plaintiff's termination, even in the absence of consideration of her FMLA leave. A

---

[4] The parties dispute what Concentric policies were when Plaintiff called out on the day she was fired. *See infra* Part III.B.

reasonable jury, therefore, could decide in Defendants' favor. Summary judgment is denied on this claim.

### B. Discrimination/Retaliation

Plaintiff next argues that Defendants retaliated against her for exercising her rights under the FMLA. (Doc. 66 at 10–11.) 29 U.S.C. § 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." "An allegation of a violation of this section is known as a 'discrimination' or 'retaliation' claim." *Sanders*, 657 F.3d at 777. "[A]lthough undecided in the Ninth Circuit, other circuits and courts in this district have adopted the *McDonnell Douglas* burden shifting framework when analyzing FMLA retaliation claims." *Schultz v. Wells Fargo Bank, Nat. Ass'n*, 970 F. Supp. 2d 1039, 1058 (D. Or. 2013) (footnote omitted) (citing *Sanders*, 657 F.3d at 777; *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003); *deBarros v. Wal-Mart Stores, Inc.*, No. 6:11–cv–06116–AA, 2013 WL 3199670, at \*4 (D. Or. June 19, 2013)). Defendant does not contest that *McDonnell Douglas* should be applied, so the Court applies it here. (Doc. 72 at 18–19.)

"Under the *McDonnell Douglas* burden shifting framework, the plaintiff first must establish a 'prima facie case of discrimination or retaliation.'" *Sanders*, 657 F.3d at 777 n.3 (quoting *Metoyer v. Chassman*, 504 F.3d 919, 931 n.6 (9th Cir. 2007)). "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate 'a legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004)). "If the employer articulates a legitimate reason for its action, the plaintiff must then show that the reason given is pretextual." *Id.*

Even if the Court assumes that Plaintiff has made a prima facie case, Defendants have provided legitimate, nonretaliatory reasons for both her placement on a PIP and ultimate termination. Ms. Riley testified that "the only way that people would be on this report with unpaid approved time would be a prior requested planned PTO, not a call-off."

- 9 -

(Doc. 73-3 at 18.)  In her declaration, Ms. Riley stated, "Concentric did not permit employees who lacked PTO to call off work unless they had received *advanced permission* to do so.  It is a basis for termination to call off work without available or sufficient PTO." (Doc. 73-1 at 8.)  There is evidence that Concentric, either through Defendant Jacobs or Ms. Riley or both,[5] determined that Plaintiff "did not have enough unused PTO to take the entire day off." (Doc. 73 at 14.)  Plaintiff alleges that she had 4.4 hours of PTO, but this is less than the hours needed to take off the full day.[6]  (Doc. 67 at 9.)  As of 1:27 PM, Plaintiff had not yet returned to work nor been fired.  (Doc. 73 at 34); (Doc. 78 at 11); (Doc. 73-27 at 2.)  Ms. Riley called Plaintiff at 4:45 PM to inform Plaintiff that she had been terminated. (Doc. 73-3 at 14.)  Even if Plaintiff had *some* accrued PTO, she did not have enough to cover the full day, and Ms. Riley did not inform Plaintiff of her termination until close to the end of the workday.  Construing the facts—including Ms. Riley's testimony of Concentric's policies—in Defendants' favor, a jury could reasonably find that because Plaintiff did not have enough PTO to cover the entire day, her failure to give advance notice of her absence constituted a legitimate reason for her termination.  Plaintiff's Motion is denied as to this claim.

**IV. Arizona Wages and Healthy Family Act**

Plaintiff next seeks summary judgment on her claim that Defendants violated Arizona's Paid Sick Leave Act.  (Doc. 66 at 12.)  Defendant also moves for summary judgment on this claim, (Doc. 72 at 1), contesting both the legal and factual basis for Plaintiff's claim, (Doc. 72 at 21, 24–25.)  Arizona Revised Statutes § 23-364(B) states,

> No employer or other person shall discriminate or subject any person to retaliation for asserting any claim or right under this article . . . . Taking adverse action against a person within ninety days of a person's engaging in the foregoing activities shall raise a presumption that such action was retaliation, which may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons.

---

[5] Defendant Jacobs testified that it was Ms. Riley who brought this issue up, and Ms. Riley testified that it was Defendant Jacobs.  (Doc. 67-1 at 58); (Doc. 73-1 at 7.)

[6] Plaintiff was paid for a full eight-hour workday for July 16, 2018.  (Doc. 67-4 at 13, 15); (Doc. 73 at 14–15.)

- 10 -

§ 23-364(B). Despite the plain words of the statute setting forth a clear and convincing standard, Defendants argue that this Court should apply a "preponderance of the evidence" standard as to whether Defendants have rebutted the statutory presumption. (Doc. 72 at 22.)

The crux of Defendants argument is that the heightened evidentiary burden effectively eliminates at-will employment in Arizona, which is an "absurd result[]" requiring judicial revision. (Doc. 80.) "Statutes must be given a sensible construction that accomplishes the legislative intent[,] and which avoids absurd results." *Ariz. Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 233, 928 P.2d 653, 657 (Ct. App. 1996). Arizona's public policy of at-will employment, however, is not absolute; Title 23 clearly exempts certain types of employment from being "severable at the pleasure of either the employee or the employer." Ariz. Rev. Stat. § 23-1501(A)(2). These include when there is a contract to the contrary or *when the employer's termination "violat[es] a statute of this state." Id.* § 23-1501(A)(3). Section 364(B) falls into the latter category, and in the circumstances, the statutory mandate is not absurd.[7]

Nevertheless, "[i]f a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim." *Erickson v. ING Life Ins. & Annuity Co.*, 731 F. Supp. 2d 1057, 1068 (D. Idaho 2010). As explained above, *see supra* Part III.B, there are issues of fact as to whether Plaintiff had enough PTO to cover her entire absence, and whether Defendants had a policy against call-offs without the requisite PTO. If the jury found for Defendants on these facts, Defendants would have proven that (1) Plaintiff had been placed on a PIP the prior Friday; (2) Plaintiff did not have enough PTO to cover her absence on

---

[7] *Bentley* and *Estrada* are inapposite. *Ariz. Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 233, 928 P.2d 653, 657 (Ct. App. 1996); *State v. Estrada*, 201 Ariz. 247, 249, 34 P.3d 356, 358 (2001). In *Bentley*, the statute in question would have been meaningless if interpreted under its plain meaning. 187 Ariz. at 233, 928 P.2d at 657 (observing that the court "kn[e]w of no instance" in which the purpose of the statute could be served absent judicial revision). In *Estrada*, applying the plain meaning of the statute would have allowed a less serious criminal offense to be punished more severely than a more serious offense—a clearly "absurd" result. *Estrada*, 201 Ariz. at 251, 34 P.3d at 360. Neither case is applicable here, where the statute is in accord with the larger statutory scheme.

- 11 -

Monday; (3) Defendants had a policy against allowing call-offs without available PTO; and (4) Defendants had terminated other employees for calling off without PTO. Given Ms. Riley's testimony and the timeline of events on July 16, and construing the facts in the light most favorable to Defendants, a reasonable jury could find by clear and convincing evidence that Plaintiff was fired for "permissible reasons." § 23-364(B). Both Motions are denied.[8]

**V. Defendant Silk Is an Employer**

Plaintiff finally seeks a finding that Defendant Silk is an "employer" as defined by the FMLA and the Arizona Paid Sick Leave Act. (Doc. 66 at 17.) Under the FMLA, "employer" is defined as "any person engaged in commerce . . . who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 C.F.R. § 825.102. Under the Arizona Paid Sick Leave Act, "employer" includes "any . . . individual . . . acting directly or indirectly in the interest of an employer in relation to an employee, but does not include the state of Arizona or the United States." Ariz. Rev. Stat. § 23-371(G). Defendant Silk testified that he was President and Chief Operating Officer of Concentric, and that he oversaw operations and had the power to hire and fire employees, set wages and benefits, and to expand or alter the company's business model. (Doc. 67-1 at 12–13.) Defendants do not contest this. (Doc. 73 at 2–3.) Nor do Defendants appear to contest that Defendant Silk is an "employer" under both federal and Arizona law. (Doc. 72 at 14.) Given that Defendant Silk seems to meet the definition of "employer," and Defendants do not object to such a finding, the Court finds that Defendant Silk is an "employer" under both federal and Arizona law.

## CONCLUSION

Because there are genuine issues of material fact as to both Plaintiff's federal and state-law claims, summary judgment is denied. Defendants do not contest that Defendant Silk is an "employer," so that fact is conclusively established.

---

[8] Because the Court denies summary judgment on both the federal and Arizona claims, the Court also denies summary judgment on whether the alleged violations were willful.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 66) is **GRANTED** in part and **DENIED** in part.  Plaintiff's Motion is granted as to Defendant Silk being an "employer." The Motion is denied as to all other grounds.

**IT IS FURTHER ORDERED** that Defendants Concentric HealthCare Solutions, Kyle Silk, and Chris Bollinger's Cross-Motion for Summary Judgment (Doc. 72) is **DENIED**.

Dated this 9th day of March, 2022.

G. Murray Snow
Chief United States District Judge