**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kendra Rightsell, | No. CV-19-04713-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Concentric Healthcare Solutions LLC, et al., | |
| Defendants. | |

Pending before this Court is the damages determination required by the jury's July 14, 2023, finding of liability against Defendants Concentric Healthcare Solutions LLC and against Kyle Silk on Plaintiff's FMLA claims. The damages are awarded as follows.

## BACKGROUND

In 2019, Plaintiff Kendra Rightsell brought this lawsuit for violations of the Family and Medical Leave Act's ("FMLA") interference and retaliation provisions and the Arizona Fair Wages and Healthy Families Act ("Paid Sick Leave Act"). Plaintiff initially named her employer, Concentric Healthcare Solutions LLC ("Concentric"), and several of its employees, including its founder and chief operating officer, Kyle Silk, its chief operations officer, Chris Bollinger, and Plaintiff's former supervisor, Andy Jacobs, as Defendants. During the course of the litigation, Mr. Bollinger and Mr. Jacobs were dismissed from the case.

After a four-day trial, a jury found that neither of the remaining Defendants violated the Paid Sick Leave Act. However, it found Concentric liable for both FMLA interference

and retaliation violations and Silk liable for FMLA retaliation.

**DISCUSSION**

### I.     Legal Standard

The parties stipulated that the Court should make its damages determinations as set forth under 29 U.S.C. § 2617. Compensatory damages are available under Section 2617, including "wages, salary, employment benefits, or other compensation," and pre-judgment interest on such amounts. 29 U.S.C. § 2617 (a)(1)(A)(i)(I); 29 U.S.C. § 2617 (a)(1)(A)(ii). Liquidated damages, equal to the amount awarded plus interest, are also available unless a defendant can show by a preponderance of the evidence that its FMLA violations were in good faith—that is, the defendant must show that it had reasonable grounds for believing that an act or omission was not a violation of 29 U.S.C. § 2615. 29 U.S.C. § 2617 (a)(1)(A)(iii). The Court may also award any equitable relief as may be appropriate. 29 U.S.C. § 2617 (a)(1)(B).

### II.     Compensatory Damages

"Back pay damages are presumed and 'are determined by measuring the difference between actual earnings for the period and those which [the plaintiff] would have earned absent the discrimination by [the] defendant.'" *White v. Oxarc, Inc.*, No. 1:19-CV-00485-CWD, 2022 WL 17668781, at *15 (D. Idaho Dec. 13, 2022), *appeal dismissed*, No. 23-35032, 2023 WL 2947441 (9th Cir. Mar. 21, 2023) (citing *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999)); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421–22 (1975). Back pay "must be reduced by the amount plaintiff could earn using reasonable mitigation efforts." *See Gressett v. Cent. Ariz. Water Conservation Dist.*, No. CV-12-00185-PHX-JAT, 2015 WL 1505774, at *4 (D. Ariz. Mar. 31, 2015). It is the Defendants' burden to prove "that, based on undisputed facts in the record, during the time in question" Plaintiff "failed to use reasonable diligence" in seeking an available, substantially equivalent job. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995).[1]

---

[1] Both parties cite cases involving mitigation in the context of Title VII claims, thus, the Court assumes Title VII mitigation principles apply.

- 2 -

At the damages hearing, Plaintiff testified that she scoured job boards for comparable jobs but stated that her potential opportunities for comparable employment were possibly limited by a noncompete clause in her employment contract with Concentric. (Doc. 180 at 93:22–94:4.)  She did not testify as to the terms of her non-compete, or as to any particular position for which she did not apply because of the non-compete.

After two months of searching, Plaintiff secured a job at Funding Well Capital, where she worked as an Account Executive. (Pl. Tr. Ex. 77-3.)  This role began on September 17, 2018, and her primary responsibilities were sales and account management. (Pl. Tr. Ex. 77-3.)  In many respects, such as Plaintiff's title, base salary, and commission availability, her role at Funding Well was substantially similar to her role at Concentric. As an Account Manager at Funding Well, Plaintiff was, as she was at Concentric, responsible for maintaining accounts and gaining new clients.  As at Concentric, her salary was made up of a base component and a commission component.  Plaintiff's initial compensation at Concentric was $15 dollars an hour, or $31,200 annually, plus commissions. (Pl. Tr. Ex. 77-4.)  Her base salary as a new employee at Funding Well Capital was roughly the same: but, at least in the short period of time that she was employed at Funding Well she did not make an equivalent amount in commissions. (Pl. Tr. Ex. 69-5.)

Plaintiff, however, voluntarily left Funding Well within fifteen weeks because it was "not the right fit" for her.  More specifically, she testified that her new position "was a full-time job where at that point in my time, medically I needed a little bit of flexibility." (Doc. 180 at 100.) Funding Well "had very strict hours," and that "[t]ransportation was an issue" because, unlike Concentric, Funding Well was not within walking distance of her home, and she does not drive. (*Id.*)  Finally, she noted that "financially it wasn't where I needed it to be to pay my bills." (*Id.*)

Even according to Plaintiff's own expert, however, there were jobs that were substantially similar to Plaintiff's job at Concentric that were reasonably available in the Scottsdale/Phoenix market.  Yet, Plaintiff testified that after she left Funding Well, she "was not looking for the same time of employment necessarily, but . . . was looking for

anything." To the extent that Plaintiff was looking for something less than full-time employment, of course, this cannot be considered "substantially equivalent" employment and she offers no persuasive evidence that the desirability, medical or otherwise, of finding a less than full-time job was in any way attributable to the Defendant. To the extent that the Plaintiff lost the benefit of taking unpaid FMLA leave because she did not have a year of employment at Funding Well, this cannot constitute an excuse for failing to seek substantially equivalent employment because FMLA benefits would not be available with any new employer for one year (and she has sought damages for the loss of employment benefits which will otherwise be awarded to her). Further, any suggestion that she can be excused from seeking any employment that was not within her ability to walk to is not persuasive to this court when there are significant transportation options available in the Phoenix/Scottsdale market. And to the extent she left her job at Funding Well without having another job because the Funding Well job "wasn't where I needed it to be to pay my bills," it makes little sense to leave one substantially similar job before finding another.

Nevertheless, to the extent that Plaintiff eventually accepted a lower-paying job as a bartender, it might have been a perfectly reasonable career choice for any number of professional or personal reasons. But, it was not a reasonable attempt to secure a substantially equivalent job that she was capable of obtaining, i.e., one that enabled her to regain the salary loss she experienced after Concentric wrongfully terminated her employment. Her right to back pay thus terminates at the end of December 2018, since there is no sufficient reason proffered as to why Defendant should pay the price of that personal choice.

*Expected Earnings.* According to Plaintiff's Expert Witness John Buehler, in 2017, the total value of her actual earnings was a combination of $79,328.85 and approximately 13% in additional benefits, discounted at 1.5%, for a total of $88,296.98.[2] (Pl. Tr. Ex. 79-2.) In 2018, Plaintiff earned $43,597.11 before her termination, and Buehler estimated that she would have made $35,732.00, plus 13% in fringe benefits thereafter, discounted

---

[2] 7.0% healthcare benefits and 6.0% employer social security contribution.

by 1.5%, for a total of $39,771.50.

While Plaintiff's commissions at Funding Well were low, this is not unexpected given that she was new Funding Well. It presumably takes time to develop leads and build client rapport. Thus, her low commissions do not suggest that her compensation at Funding Well would not have eventually been comparable to her compensation at Concentric. Indeed, Brad Taft testified that Plaintiff had the potential at Funding Well over time, to equal or exceed the salary that she made at Concentric. (Doc. 184 at 29.) Still, her wrongful termination from Concentric terminated her experience and industry knowledge and thus forced her to start over at square one on a comparable trajectory.

Thus, Plaintiff is entitled to back pay for the period between Plaintiff's wrongful termination from Concentric on July 16, 2018, and the end of her employment with Funding Well. She is entitled to her full salary from July 16, 2018, to September 17, 2018. According to Taft's Expert Report, Plaintiff's 2017 salary was reflective of her 2018 salary. She earned $79,328.65 in 2017, which is approximately $1,525.55 a week. There were approximately 9 weeks within the relevant time frame. Thus, Plaintiff is entitled to $13,729.95 in back pay for the period she spent searching for a job, plus 13% in fringe benefits and the 1.5% deduction identified by Buehler, i.e., $15,282.12.

For the period in which she was employed at Funding Well—September 17, 2018, to December 31, 2018—she is entitled to the difference between her predicted salary at Concentric (adjusted for benefits and the relevant deduction) and her actual salary at Funding Well, i.e., $15,682.45.[3] Thus, when reduced by her failure to mitigate, Plaintiff's total back pay award is $30,964.57.

### III.  Pre-Judgment Interest

Under the FMLA, an employee is entitled to interest, "calculated at the prevailing rate," 29 U.S.C. § 2617(a)(1)(A)(ii), on the amount of "any wages, salary, employment

---

[3] There are approximately 15 weeks between September 17, 2018, and December 31, 2018. If Plaintiff was paid at the rate of Concentric salary for that period, she would have earned $22,883.25. Considering the fringe benefits (13%) and reducing by the relevant deduction (1.5%) that amount becomes $25,470.20. Subtracting her actual earnings from that amount produces the amount above. ($25,470.20 - $9,787.75 = $15,682.45).

benefits, or other compensation denied or lost to such employee by reason of the [FMLA] violation," § 2617(a)(1)(A)(i)(I). The statute does not define "prevailing rate." However, the Ninth Circuit has established that "the measure of interest rates prescribed for post-judgment interest in 28 U.S.C. [§ ] 1961(a) is . . . appropriate for fixing the rate for prejudgment interest in cases . . . where prejudgment interest may be awarded." *White v. Oxarc, Inc.*, No. 1:19-CV-00485-CWD, 2022 WL 17668781, at *21 (D. Idaho Dec. 13, 2022), *appeal dismissed*, No. 23-35032, 2023 WL 2947441 (9th Cir. Mar. 21, 2023) (internal punctuation omitted) (quoting *W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984)); *see also Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1093 (9th Cir. 2014).

Although Defendants argue that Plaintiff has not carried her evidentiary burden to establish the "prevailing rate," 28 U.S.C. § 1961(a) defines the rate as a matter of law. "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). In this case, that amount is 5.33%. Selected Interest Rates, Fed. Rsrv., https://www.federalreserve.gov/releases/h15/. Applying that rate to the $30,964.57 back-pay award amounts to $1,650.41 in pre-judgment interest.

### IV. Liquidated Damages

Under 29 U.S.C. § 2617(1)(A)(iii), Plaintiff is presumptively entitled to "an additional amount as liquidated damages equal to the sum of" compensatory damages and pre-judgment interest, "unless the employer demonstrates that its violation was in good faith and that it had a reasonable basis for believing that its conduct was not in violation of the FMLA," *Jadwin v. Cnty. of Kern*, No. 07CV0026OWWDLB, 2010 WL 1267264, at *12 (E.D. Cal. Mar. 31, 2010) (citing *Cooper v. Fulton County, Ga.,* 458 F.3d 1282, 1287 (11th Cir. 2006)). Whether the employer acted in good faith and had a reasonable basis for believing that its conduct was not in violation of the FMLA are determinations made by

the Court. *See* 29 U.S.C. § 2617(a)(1)(A)(iii).[4]

The Court begins from the presumption that Plaintiff is entitled to liquidated damages. As the jury determined that both Defendants engaged in retaliatory acts, it seems a tall burden to find that their FMLA violations were made in good faith. Defendant argues that it had a "reasonable basis" for its adverse actions against Plaintiff because of "persistent performance and attitude issues, spanning over the last six months of her employment." (Doc. 185 at 15.) However, the jury already determined that Defendant retaliated against Plaintiff for taking FMLA-protected leave, which, in the Court's estimation, precludes a finding of good faith even if Defendant might also have set forth evidence from which the jury might have concluded that she was also terminated for other reasons. Accordingly, Plaintiff is entitled to liquidated damages equal to the amount of back pay and prejudgment interest awarded above.

## V.     Equitable Relief

Under 29 U.S.C. § 2617(a)(1)(B), the Court may grant "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." The Ninth Circuit recognizes that reinstatement is "the preferred equitable remedy" for an FMLA violation, but it is not always practical. *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1012 (9th Cir. 2010) (citing *Downey v. Strain*, 510 F.3d 534, 543 (5th Cir. 2007)). "To begin, the determination whether reinstatement is feasible, either immediately or in the future, is a balance of equitable concerns." *Id.* Reinstatement is not feasible here. Defendant represents that "no evidence has been presented that Concentric has the same or an

---

[4] "An equitable award, like front pay, that falls under § 2617(a)(1)(B) is not eligible for inclusion in a liquidated damages computation because liquidated damages under the FMLA can only accrue from an amount awarded under § 2617(a)(1)(A)(i)(I) or (II)." *Jadwin v. Cnty. of Kern*, No. 07CV0026OWWDLB, 2010 WL 1267264, at *11 (E.D. Cal. Mar. 31, 2010); *see also Traxler v. Multnomah County*, 596 F.3d 1007, 2010 WL 669251 (9th Cir. 2010).

- 7 -

equivalent position to which Ms. Rightsell can be reinstated." (Doc. 185 at 12.) Plaintiff does not argue otherwise.

"[I]f the court determines that reinstatement is inappropriate, such as where no position is available, or the employer-employee relationship has been so damaged by animosity that reinstatement is impracticable," front pay is an appropriate remedy. *Traxler*, 596 F.3d at 1012. "Front pay is 'money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.'" *Id.* at 1009 n.1. Here, however, Plaintiff lost no compensation after she failed to mitigate her damages upon leaving her employment at Funding Well Capital on December 31, 2018. Thus, she is not entitled to any front pay in lieu of reinstatement because the purpose of front pay is "to make the victim of employment discrimination whole." *Jung v. Potter*, No. CV04-429-PHX-MHM, 2008 WL 2620905, at *2 (D. Ariz. July 1, 2008); *see also Lane v. Grant Cnty.*, No. CV-11-309-RHW, 2013 WL 5306986, at *8 (E.D. Wash. Sept. 20, 2013), *aff'd*, 610 F. App'x 698 (9th Cir. 2015). Plaintiff is made whole by the award of back pay, prejudgment interest, and liquidated damages.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff is entitled to the following damages:

1. $30,964.57 in back pay,
2. $1,650.41 in pre-judgment interest,
3. $32,614.98 in liquidated damages
4. Plaintiff may further apply to the Court for an award of attorneys' fees in compliance with the local rule.

Dated this 25th day of September, 2023.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge