WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kendra Rightsell,<br><br>       Plaintiff,<br><br>v.<br><br>Concentric Healthcare Solutions LLC, et al.,<br><br>       Defendants. | No. CV-19-04713-PHX-GMS<br><br>**ORDER** |

Pending before this Court are: (1) Plaintiff's Motion for Attorneys' Fees and Non-Taxable Expenses (Doc. 188); (2) Plaintiff's Supplement to and Renewed Motion for Attorneys' Fees and Non-Taxable Expenses (Doc. 199); Plaintiff's Motion to Amend Findings of Fact and to Amend Judgment by Plaintiff Kendra Rightsell (Doc. 205) and Defendants Concentric Healthcare Solutions, LLC's, Silk and Bollinger's Motion to Alter or Amend Judgment (Doc. 206). For the following reasons, both parties' Motions to Amend (Docs. 205 and 206) are denied and Plaintiff's Motion for Attorney's Fees (Doc. 188) is granted. As is further explained below, Plaintiff is awarded $259,667.60 in fees and $14,666.31 in non-taxable costs for a total of $274,333.91.

**Plaintiff's Motion to Amend Judgment (Doc. 205)**

Plaintiff moves the Court to amend its findings and judgment pursuant to both Fed. R. Civ. P. 52 and 59. As Plaintiff notes, the consensus is that "[p]arties should not use a Rule 52(b) motion to relitigate issues previously decided or introduce new theories, but rather to correct 'manifest legal or factual errors' or to present newly discovered evidence."

*Peyre v. McGarey,* CV-23-090350-PHX-DWL, 2023 WL 4351544 at * 1 (D. Ariz. July 5, 2023). "Rule 52(b) motions are appropriately granted in order to correct manifest errors of law or fact." *Ollier v. Sweetwater Union Hight Sch. Dist.*, 858 F. Supp.2d 1093, 1117 (S.D. Cal. 2012). Similarly Rule 59(e) motions "should not be granted, absent highly unusual circumstances, unless the district court. . . committed clear error." *389 Orange Street Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir. 1999).

Plaintiff does not meet either standard here. The Defendants met their burden of proof in establishing by a preponderance of the evidence that Plaintiff failed to mitigate her damages after December 31, 2018.[1] *Bell v. VF Jeasnwear LP,* No. CV-14-01916-PHX-JJT, 2018 WL 1034952 at *7 (D. Ariz. Feb. 23, 2018), aff'd, 819 F. App'x 531 (9th Cir. 2020) (holding that the preponderance of evidence standard applies to a mitigation defense). Often, they did so through Plaintiff and her own witnesses. After the Court heard the evidence on damages and the parties submitted their closing arguments via written brief, the Court made its findings of fact (Doc. 193) and thereafter entered judgment (Doc. 195). Both parties acknowledge that the award of back pay or front pay is an equitable remedy for the Court to decide. In making such an award, "Congress could not have been more explicit in leaving the relief to the equitable discretion of the court, to be determined in light of all relevant facts and circumstances." *Franks v. Bowman Transp. Co., Inc.,* 424 U.S. 747, 789 (1976 Burger, C.J., concurring). In considering the relevant facts and circumstances the Court is allowed to consider the reasonable inferences that arise from the facts. Despite Plaintiff's allegations to the contrary, each of the Court's

---

[1] In its ruling on the damages issue this Court somewhat carelessly quoted *Odima v. Westin Tucson Hotel,* 53 F.3d 1484 (9th Cir. 1995) which itself somewhat carelessly quoted *E.E.O.C. v. Farmers,* 31 F.3d 891, 906 (9th Cir. 1994) that was determining whether a Defendants had established the defense of failure to mitigate on summary judgment. EEOC stated "to prevail on its motion for summary judgment, Farmer Bros. had to prove that, based on undisputed facts in the record, during the time in question there were substantially equivalent jobs available, which Estrada could have obtained, and that she failed to use reasonable diligence in seeking one." Of course, to achieve summary judgment, material facts must be undisputed. Such facts need not be undisputed, however, for the finder of fact to make a conclusion with respect thereto after trial. Thus, while the *Odima* holding is an obvious and correct statement of the law as it applies the summary judgment standard to pre-trial factual determinations, it is not the standard for making findings post-trial.

challenged findings is based upon testimony and evidence or reasonable inferences drawn therefrom, and the equitable relief is appropriately explained and tailored to those facts and circumstances. For example, in Plaintiff's testimony she testified that she expected her commissions at Funding Well to grow although it would be "a longer wait time" than initially expected. (Doc. 155 at 509:7-10). Further Plaintiff's expert testified that employment on a salary plus commission basis that there was the opportunity for an increase in pay. (Doc. 184 at 1068:25-1069:2). In any event, the Court awarded Plaintiff the difference between her salary plus commission at Concentric and her salary plus commission at Funding Well until Plaintiff voluntarily left Funding Well. It thus did not find, that her Funding Well employment was the immediate remunerative equivalent of her employment at Concentric. It did determine that it would become so. However, when Plaintiff voluntarily left Funding Well after a short period of employment and before having any replacement job, the Court found that Plaintiff did so as a matter of personal preference, and that from the standpoint of an obligation to mitigate damages it was not reasonable.

In so doing the Court considered Plaintiff's reasons for leaving Funding Well, and found that while they may have been understandable from the point of view of personal choice and convenience, they were not consistent with her obligation to mitigate damages. This was especially so when she left Funding Well before having replacement employment, and, when she finally accepted replacement employment, it was at a job that was not the substantial equivalent of her job at Concentric although such jobs were available. *Sangster v. United Air Lines, Inc.,* 633 F.2d 864, 868 (9th Cir. 1980) (Holding that an employee that "voluntarily quit[s] alternative employment without good reason" has accepted a "willful loss of earnings.") The availability of other equivalent employment in the area was confirmed by Plaintiff's own expert. Further, despite her lack of a driver's license, public transportation was reasonably available, as Plaintiff herself acknowledged. Plaintiff had been reimbursed for the temporary loss of FMLA benefits in the damages award, and FMLA benefits are not available with a new employer for a year. Plaintiff did not testify

she was hindered in her ability to find alternate employment because of COVID, and in any event, to the extent the Plaintiff now offers it as a post-hoc justification, the viral disease was not yet present in the human population at the time. (Doc. 193 at 3-4).

Further in adopting Plaintiff's 2017 earnings as well as the percentage amount to be added to her earnings to represent employment benefits, as well as applying a discount rate in determining the basis of the backpay awarded, the Court adopted the opinion provided by Plaintiff's own expert and argued by Plaintiff in her written closing argument on damages. Nor did the Plaintiff make any specific request for compound interest. Rather, Plaintiff requested that an interest award be made consistent with the attachments to its written closing arguments. (Doc. 186 at 16). While those attachments did break out an amount for interest on backpay, they did not indicate that the interest amount was compounded annually (if in fact it was). Because all of the attached amounts pre-computed by Plaintiff requested exaggerated damage amounts, they were not used by the Court. The Plaintiff did not alert the Court that she sought, or that she was entitled to compound interest until her REPLY brief on the present motion to amend pleadings. Finally, in her Reply to the Motion to Amend Pleadings, Plaintiff identifies a statute which indicates that compound interest is the norm in federal litigation. But she neither sought compound interest, nor cited the Court to the statute prior to the award. Thus, Plaintiff has an insufficient basis upon which to argue that the Court committed "manifest" or "plain" error based on the simple interest awarded. Finally, the Court did not find that Plaintiff was entitled to any other equitable relief than it awarded. Plaintiff still has not established her entitlement to such relief. She acknowledged that reinstatement was not a practical remedy, nor did she establish to the Court's satisfaction that Defendants were engaged in systematic conduct that violated the FMLA or that needed to be enjoined. Plaintiff's Motion to Amend Findings of Fact and Judgment (Doc. 205) is, therefore, denied.

**Defendants' Motion to Alter or Amend Judgment**

Defendants' Motion to Alter or Amend Judgment (Doc. 206) is also denied. It was not timely submitted. The Court is not inclined to alternatively consider the motion as a

Rule 60 Motion since Defendants raise Rule 60 for the first time in its Reply. But even if the Court did so, the argument provides no basis for relief. It is not appropriate to instruct the jury on the McDonnell-Douglas burden shifting analysis at trial. *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 855 (9th Cir. 2002) ("Regardless of the method chosen to arrive at trial, it is not normally appropriate to introduce the *McDonnell Douglas* burden-shifting framework to the jury.").

**Plaintiff's Motion for Attorney's Fees ( Doc. 188)**

Plaintiff is entitled to an attorneys' fee award under 29 U.S.C. § 2617(a)(3) ("[t]he court . . . shall, in addition to any judgement awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."). "'[T]he most critical factor' in determining a reasonable fee 'is the degree of success obtained.'" *Marek v. Chesney,* 473 U.S. 1, 11 (1985) quoting *Hensley v. Eckhart,* 461 U.S. 424, 436 1983); *Ambat v. City & County of San Francisco,* 757 F.3d 1017, 1032 (9th Cir. 2014) quoting *McCown v. City of Fontana,* 565 F.3d 1097, 1103 (9th Cir. 2008), (holding that "the district court should adequately explain the reasonable number of hours and hourly rate it uses in calculating the fee, and appropriately adjust the award to account for [a plaintiff's] limited success on claims and damages, and for any public benefit derived from his suit.")

The parties dispute both the hourly rates that should be awarded to Plaintiff and the number of hours that are reasonable. The rate to be applied is "the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir. 2007) – or in other words the prevailing market rate for paying clients. *Carson v. Billings Police Dep't,* 470 F3d 889, 891. (9th Cir. 2006). While Plaintiff's counsel indicates what his billing rates are in his affidavit[2], he does not indicate

---

[2] Mr. Bonnett states that his rate, and Ms. Martin's were "billed at our senior partner rate of $695 per hour,' Ms. Kroll's rate was billed at their junior partner rate of $575/hour, that Ms Murphey, Mr. Davis and Ms. Carrier's time that was billed at "our associate rate of $395/hour" and that four of the firm's paralegals billed at "our paralegal rate" which began at $125/hour and during the litigation was raised to $130/hour. He avows that he is familiar with the billing rates of practitioners in his field in Phoenix, and that the fees he seeks are

in the affidavit that such rates are rates that he charges to and receives from paying clients.[3] Neither does either of the respected lawyers that write affidavits on counsel's behalf indicate that the billing rates they discuss actually represent the market rate—or the billing rate actually charged to paying clients. As Defendants point out, the billing rate suggested by Plaintiff's counsel is not necessarily the market rate. "Because Martin & Bonnett focuses its practice on representing employees in cases where fee-shifting statutes apply, . . . Martin & Bonnett, PLLC can bill at any rate that it believes will be awarded by the Court. Put another way, Plaintiff's counsel's "current hourly billing rates" are not rates that it could charge to parties (including defendants) in a free market who would pay it."

The Court is persuaded, however, that very few if any attorneys would be willing to represent Plaintiffs to bring a meritorious claim to judgment, if they could only be reimbursed what an employee plaintiff would be able to pay. Therefore, the relevant market is not necessarily what the lawyer would charge Plaintiffs in employment cases who were paying their own attorney's fees. Rather, the Court applies the current hourly billing rates that experienced lawyers with an employment law specialization would charge in a free market to Defendants or others who could pay for such services such as when such lawyers are hired as mediators/arbitrators in settlement cases.

Ms. Larson in her affidavit states that "Phoenix employment attorneys, many with 30+ years of experience, specialized training and certifications in alternative dispute resolution, and/or experience, as judges or judges pro tem, charge between $325.00 and $600.00 per hour to serve as a mediator or arbitrator." Although Mr. Schleier in his affidavit does not specify that the billing rates to which he opines are rates that are actually paid by a client capable of doing so, he does indicate typical "billing rates" for attorneys who are within the range of Mr. Bonnett's experience and quality range. Those rates --

---

well within the range of those rates. But he does not specify that these billing rates are the rates charged to paying clients. And, neither of the attorneys who submit affidavits on behalf of Plaintiff do so either.

[3] At oral argument Plaintiff's counsel avowed that he does charge and receive that rate for some engagements, but ultimately, in fairness the Court makes its determination on the written briefings to which Defendants had a chance to respond. The amount awarded, the Court believes, constitutes a market rate.

- 6 -

from $450.00 to $700.00 per hour and $250.00 to $400.00 for less experienced attorneys—have substantial overlap with the rates indicated by Ms. Larson.  Similarly, Mr. Petitti opines that "the prevailing range of hourly rates for lawyers of comparable experience and reputation of those in Mr. Bonnett's law firm, as he has outlined in his Declaration is $395.00-$695.00 and $130.00 or more for paralegal/legal assistant time."

Mr. Bonnett is an experienced and skilled litigator and deserves to be paid at or close to the top of the market rate.  The top market rate that the Court can infer from the affidavits is $600.00 per hour.  While Ms. Kroll is also a skilled brief writer, and may have other abilities and experience, the Court, after examination and consideration of her role in this litigation, is persuaded that the billable rate submitted is in excess of the market rate for the tasks she performed on this case.  The appropriate market rate for the services she provided is $375.00 per hour.  The market rate for the experience and tasks performed by Ms. Carrier is $350.00 per hour, for Ms. Murphey is $250.00 per hour, and Mr. Davis at $225.00 per hour.  The paralegal/legal assistant rates charged by Martin & Bonnet are appropriate.

In arriving at a reasonable fee, the most critical factor is a consideration of the outcome achieved.  As the Court in *Marek* noted "prevailing at trial 'may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.'" *Id.* at 11 quoting *Hensley,* 461 U.S. at 436.  The *Marek* case went on to note "In a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney." *Marek* at 11.  "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Hensley,* 461 U.S. at 436.  As *Marek* further notes "This case presents a good example:  the $139,692 in postoffer legal services resulted in a recovery $8000 less than petitioners' settlement offer.  Given Congress' focus on the success achieved, we are not persuaded that shifting the postoffer costs to respondent in these circumstances would in any sense thwart its intent under

§1988." *See also, Moriarty v. Svec,* 233 F.3d 955, 967 (7th Cir. 2000) (holding that attorney's fees accrued after a settlement offer has been made that equals or exceeds the total damages recovered by the prevailing party may be adjusted to reflect that the fees provided after the offer of judgment were not "reasonable.") , *Isom v. JDA Software Inc.,* 225 F. Supp. 3d 880, 888-89 (D. Ariz. 2016).

Plaintiff was awarded judgment in the amount of $65,229.96. On March 4, 2023, the eve of the original trial date, Plaintiff offered to settle the case for $495,000.00 with $295,000.00 apportioned as attorney's fees and costs and $200,000.00 to Plaintiff. Defendants counteroffered at $100,000.00 inclusive of attorney's fees and costs to settle the case. On July 7-8, 2023, the eve of the second trial date, the parties again had settlement discussions. Plaintiff rejected Defendants' $100,000.00 offer and offered to settle at $485,000.00. At the end of these final negotiations Plaintiff had lowered its offer to settle to $400,000.00. Plaintiff had increased its offer to $200,000 inclusive of attorneys' fees and costs. Plaintiff did not accept this offer. Pursuant to the terms of her fee agreement with her law firm, Plaintiff would have ultimately received greater recoveries had she settled the case pursuant to either settlement offer. (Even assuming that failure to award annual compound interest constituted plain error, (a proposition that the Court rejects) no such interest would have accrued had Plaintiff accepted her first settlement offer.) [4]

As in *Marek* then, Plaintiff received no benefit from the post-settlement offer services rendered to the Plaintiff after March 4, 2023. At any event, after that date there was much duplication of services that occurred due to trial being postponed at the last minute on March 8.

On the other hand, however, Plaintiff received a jury award for her FMLA claim that was not insubstantial. She was thus entitled to recover on her claim, and she received no settlement offers that would have allowed her to recover the amount of her claim short of trial until the eve of the first trial date. She is thus, entitled to recover the reasonable

---

[4] Further, because Plaintiff's Supplement to and Renewed Motion for Attorney's Fees and Non-Taxable Expenses (Doc. 199) seeks awards of fees and expenses incurred after she declined her settlement offer, the Court awards none of those amounts.

- 8 -

amount of attorneys' fees incurred by her counsel up to that point. The Court has reviewed the billing provided by the Plaintiff to determine whether there are fees within that period that should not be awarded, or other appropriate reductions made. Being mindful that the Plaintiff's counsel have already done some redacting of requested payment, the Court has examined the entries as set forth by Defendants in their Response to Plaintiff's request for fees, e.g., Doc. 197-5, and has determined, for the most part, that the entries provide sufficient detail and do not demonstrate excessive conferences or billing. The initial lodestar amount is $265,896.50 (340.8 hours from Mr. Bonnett at $600.00 per hour, 83.8 hours from Ms. Kroll at $375.00 per hour, 47.6 hours from Ms. Murphey at $250.00 per hour, 5.6 hours from Mr. Davis at $225.00 per hour, 3.7 hours from Mirra Carrier at $375.00 per hour and 118.8 hours from the paralegals at $130.00 per hour.)

Nevertheless, there are several entries that are excessive duplicative or unmerited. There are also some instances of block-billing that merit some reduction. 1.8 hours of Mr. Bonnett's time were excessive or duplicative (the billing entries for 7/15/19, 9/6/19, 5/14/20, 2/7/23), that 7.3 hours of Ms. Kroll's time were excessive or duplicative (7/15/22, 9/2/22, 11/29/22 2/2/23, 2/11/23) that 5.1 of Jennifer Murphey's hours were excessive or duplicative (3/27/20, 11/30/20, 11/22/21). Paralegal time (KP, LS) that was excessive or duplicate amounts to 5.0 hours (12/13/19; 9/21/22, 9/22/22, 1/24/23).

Further there were instances of block billing for which a 30% reduction is made. They include instances of block billing of 1.6 hours by Mr. Bonnett (6/21/19, 12/10/19), 3.6 hours by Ms. Murphey, 1.0 hours by Mr. Kroll, and 8.1 hours (8/31/20, 2/4/21, 4/27/21, 11/10/22, 12/29/22 and 2/23/23) by paralegal KP. These amounts should also be deducted from the lodestar. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975). As previously mentioned, this Court would also have deducted the duplication in services that necessarily resulted from the postponement of the March 7 trial date necessitated by Counsel's illness. But these amounts are not deducted because the amounts accrued post March 4, 2023 are deducted from the lodestar at any rate, because they did not amount to any benefit for Ms. Rightsell.

In costs, Plaintiff is awarded $6,189.62 for her e-discovery vendor, and adjusted costs granting other allowable costs accrued prior to March 4, 2023. Those amounts include: $77.00 in delivery costs, $1,244.96 in copy costs, $1,544.98 in online legal research services, $83.95 for the transcript of the final pretrial conference, $4,000.00 for the expert services of Bradford H. Taft, $1,500.00 for the expert services of Dr. John Buehler, and $25.80 in UPA overnight expenses. The awardable non-taxable costs total $14,666.31.

**IT IS THEREFORE ORDERED** denying (1) Plaintiff's Motion to Amend Judgment (Doc. 205) and Defendants' Motion to Alter or Amend Judgment (Doc. 206) and (2) Plaintiff's Supplement to and Renewed Motion for Attorneys' Fees and Non-Taxable Expenses (Doc. 199).

**IT IS FURTHER ORDERED** granting Plaintiff's Motion for Attorney Fees (Doc. 188). Plaintiff is awarded $259,667.60 in fees and $14,666.31 in non-taxable costs for a total of $274,333.91.

Dated this 1st day of April, 2024.

_____
G. Murray Snow
Chief United States District Judge